

**RECEIVED**

JAN 1 1 2022

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 3:22-cr-5 |
| | ) | |
| v. | ) | **INDICTMENT** |
| | ) | T. 18 U.S.C. § 1343 |
| MARTELL DMAR BROOKS, | ) | T. 18 U.S.C. § 981 |
| also known as, Matrell Brooks, | ) | T. 18 U.S.C. § 982(a)(1) |
| | ) | T. 21 U.S.C. § 853 |
| | ) | T. 28 U.S.C. § 2461(c) |

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### COUNTS 1-8
### Wire Fraud

**INTRODUCTION**

1. MARTELL DMAR BROOKS, also known as Matrell Brooks, is a resident of Nevada.

2. Walmart is a retail store with its headquarters in Bentonville, Arkansas, and thousands of retail locations throughout the United States, including in Iowa.

3. Walmart uses "Point of Sale" registers, operating as computers, to electronically process purchases and returns of merchandise. When a purchase is made at Walmart, the "Point of Sale" register creates an electronic record of the purchase and issues a receipt with a unique electronic "Transaction Code" (TC) for the purchase, similar to a bar code.

4.  When a Walmart employee processes a return using a Walmart receipt, the employee enters information into a "Point of Sale" register, which results in an electronic communication being transmitted to the Walmart store's computer server. This, in turn, results in a wire communication signal transmitted via interstate commerce to Walmart's data centers that are located in Arkansas, California, Colorado, Missouri, Texas, and Washington. Thereafter, another wire communication signal is transmitted in interstate commerce from Walmart's data centers to the Walmart store's server where the return is occurring, and then back to the store's "Point of Sale" register where the Walmart employee is processing the return.

**MANNER AND MEANS OF THE SCHEME**

5.  The grand jury re-alleges and incorporates by reference paragraphs 1-4 of this Indictment as though fully set forth herein.

6.  In 2017, Defendant, MARTELL DMAR BROOKS, also known as Matrell Brooks, began to exploit flaws in the electronic "Point of Sale" system used by Walmart stores in two particulars.

7.  First, at the time relevant hereto, the Walmart "Point of Sale" system did not alert a cashier that a receipt presented to them by an individual requesting a refund was for a voided transaction.

8.  BROOKS devised a scheme and artifice to exploit this flaw to defraud Walmart out of money. Specifically, BROOKS would approach a Walmart register and advise a Walmart employee that he wanted to purchase product protection plans.

After the employee rang up the purchase and generated a sales receipt, BROOKS convinced the employee to void the transaction by telling them he needed a gift receipt, no longer wanted to proceed with the transaction, or some other explanation for why the transaction could not proceed. Based on BROOKS's statements, the employee voided the transaction, but BROOKS kept, or took a photograph of, the initial receipt that was generated by the first, but later voided, transaction. BROOKS then went to another Walmart location, and presented the receipt for the voided transaction, creating the false pretenses and fraudulently representing that the protection plans had been actually purchased. The Walmart system did not catch that the receipt was for a voided transaction. This caused the return to be processed and BROOKS left the store with returned money, which was the property of Walmart, that he was not entitled to receive.

9. Second, at the time relevant hereto, the Walmart "Point of Sale" system created an electronic record of a purchase by issuing a receipt with a unique TC. The TC was a number printed on the receipt at the time of a purchase. This TC was generated by an algorithm that scrambled certain data points, to include the store number, register number, transaction number, sales amount, and date. When merchandise was returned to Walmart using a receipt, the "Point of Sale" system read the receipt's unique TC, which revealed information about the purchase represented on the receipt, including whether a return had already been processed. If one or more numbers of the TC were altered, the "Point of Sale" system would not

link the altered receipt to the original purchase. Therefore, the history of that transaction, including any subsequent return, would not be recognized by the "Point of Sale" system. However, the "Point of Sale" system still recognized, and decoded, the other data points contained in the TC which made it appear to be authentic to the computer and the employee processing the return, thereby allowing a refund to be processed.

10.     BROOKS devised a scheme or artifice to exploit this flaw to defraud Walmart out of money. Specifically, BROOKS purchased product protection plans that generated a receipt with a TC. BROOKS fraudulently altered the TC code on the original receipt by changing some of the numbers (usually just the last digit), which concealed the fact that the protection plans were not purchased. BROOKS went to another Walmart location (or to a different register in the same store), presented the receipt with the altered TC, and created the false pretenses and fraudulently representing that the protection plans had actually been purchased. The "Point of Sale" system did not link the receipt to the original purchase because the TC had been altered, therefore the history of any refunds was not tracked. Further, because the other numbers contained within the TC were left unchanged, the "Point of Sale" system erroneously deemed the TC to be legitimate and allowed the return to be processed. Either before or after he received a refund on the receipt with the altered TC, BROOKS also received a refund on the original purchase with

the legitimate TC. Thus, BROOKS received two refunds from Walmart for one purchase.

11. Every time a Walmart employee processed a return for BROOOKS using a receipt either from voided transaction or an altered TC, the Walmart employee entered information into a "Point of Sale" register, which resulted in a wire communication signal being transmitted in interstate commerce as described in paragraph 4.

12. Since 2017, BROOKS has been involved in more than 150 fraudulent returns at Walmart stores in more than 20 states throughout the country.

13. As a result of BROOKS's activity, Walmart has suffered losses in excess of $130,000.

**EXECUTION OF THE SCHEME**

On or about the dates shown below, in the Southern District of Iowa, and elsewhere, Defendant MARTELL DMAR BROOKS, also known as Matrell Brooks, having devised a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted, or caused to be transmitted by means of wire communication in interstate commerce, electronic communications and signals for fraudulent returns using the Walmart "Point of Sale" system and servers.

| Count | Date | Transaction |
|---|---|---|
| 1 | 03/18/2019 | Fraudulent return at Walmart #1475 – |

|   |            |                                                                                              |
|---|------------|----------------------------------------------------------------------------------------------|
|   |            | Washington, Iowa, with TC 5230064508879781866619                                             |
| 2 | 03/18/2019 | Fraudulent return at Walmart #784 – Mt. Pleasant, Iowa, with TC 284685529301913939562        |
| 3 | 03/18/2019 | Fraudulent return at Walmart #985 – Fairfield, Iowa, with TC 062769809553535258840           |
| 4 | 03/19/2019 | Fraudulent return at Walmart #1393 – Oskaloosa, Iowa, with TC 886340382244949603081          |
| 5 | 03/19/2019 | Fraudulent return at Walmart #751 – Pella, Iowa, with altered TC 521006953837578382419       |
| 6 | 03/19/2019 | Fraudulent return at Walmart #2935 – Knoxville, Iowa, with altered TC 370928638709697074605  |
| 7 | 03/19/2019 | Fraudulent return at Walmart #1491 – Indianola, Iowa, with TC 402503742130308835144          |
| 8 | 03/19/2019 | Fraudulent return at Walmart #3394 – Atlantic, Iowa, with altered TC 697491267012320005578   |

These are in violation of Title 18, United States Code, Section 1343.

## Forfeiture Allegations

25.   As the result of committing the wire fraud charged in Counts One through Eight of this Indictment, MARTELL DMAR BROOKS, also known as Matrell Brooks, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

## Substitute Assets Provision

26.   If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred to or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished; or

   e. has been commingled with other property which cannot be subdivided without difficulty; and

   f. it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section

2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.

**A TRUE BILL.**

FOREPERSON

Richard D. Westphal
United States Attorney

By: _____
Amanda W. Searle
Assistant United States Attorney